UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANDRE STEPHENS,

        Plaintiff,                        Case No. 1:12-cv-551

v.                                          Honorable Gordon J. Quist

CAROL HOWES et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Discussion

    I.    <u>Factual allegations</u>

Plaintiff Andre Stephens presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Gus Harrison Correctional Facility, though the actions he

complains of occurred while he was housed at the Florence Crane Correctional Facility (ACF). He sues the MDOC Deputy Director of Housing Linda Beckwith, together with the following ACF employees: Warden Carol Howes, Resident Unit Manager (unknown) Howes, Assistant Resident Unit Supervisor T. Barnes, and Dr. Syed Sohail.

At about 9:40 p.m. on February 5, 2011, while Plaintiff was lying on the lower bunk of his housing cube, the upper bunk collapsed. Both the bunk materials and the inmate from the upper bunk fell on top of Plaintiff. Plaintiff alleges that his lower back was badly injured and his left leg was broken above the ankle. When he tried to stand, Plaintiff fell, hitting his back on a metal chair and hitting his head on a metal bunk. Plaintiff complains that he was in excruciating pain and limped to the officer's podium. Officer Hollingsworth called the control center and asked if Plaintiff was in pain. Lieutenant DeCline arrived and took pictures. In the interim, the shift changed. Officer Clark then asked Plaintiff to fill out an accident report. Plaintiff informed Clark that pain kept him from gripping the pen. Officer Clark refused to send Plaintiff to health services unless he completed the report. Clark and DeCline ordered Plaintiff to move to another cube, which he did with the assistance of other prisoners. Plaintiff then asked to go to the bathroom and informed Clark that he could not get there himself. Clark refused to help. Plaintiff attempted to walk, but he collapsed in pain and lost control over his bladder and bowels. DeCline and another officer got a wheelchair and took Plaintiff to the control center. Plaintiff was then placed in a holding cell for the next nine hours, still in his soiled clothing and without shoes. He heard officers laughing at him.[1]

At approximately 9:00 a.m. on February 6, 2011, Nurse Peek came to Plaintiff's cell. She assisted Plaintiff into a wheelchair and then pushed him to health care. Peek examined Plaintiff and told him his back was very swollen. She called Defendant Dr. Sohail at home, and Sohail

---

[1] Plaintiff does not name either Clark or DeCline as Defendants in this action.

- 2 -

instructed Peek to give Plaintiff a shot of Toradol in the back and told Peek that he would see Plaintiff in the morning. Defendant Sohail, however, did not schedule an appointment until February 9, 2011. On that date, after Plaintiff arrived at health services, he was informed by Physician's Assistant (PA) Ovellette that his appointment had been canceled and rescheduled for February 11, 2011. That same date, PA Ovellette requested a psychiatric examination of Plaintiff because he was not eating. Plaintiff alleges that he was not eating because he had been denied food trays and could not walk to the dining room. Plaintiff was examined by psychiatrist James H. Briggs on March 9, 2011. Briggs concluded that Plaintiff was mentally stable.

Defendant Sohail examined Plaintiff's back and left leg on February 11, 2011. Sohail advised Plaintiff that he did not believe the leg was broken, but he ordered x-rays anyway. Plaintiff's leg was x-rayed on March 11, 2011, revealing a fracture near the ankle. Plaintiff was sent to the hospital on March 14, 2011, and his leg was splinted.

On March 17, 2011, Plaintiff was transferred to the Mound Correctional Facility and placed in the residential treatment program (RTP) for mentally ill prisoners. On September 17, 2011, Plaintiff was transferred to the Gus Harrison Correctional Facility RTP, where he was reevaluated. He was found to be not qualified for the RTP, and he was discharged from that program.

Plaintiff asserts that, as the result of the accident, he is now confined to a wheelchair for life. He asserts that he has exhausted all of his administrative remedies. For relief, he seeks compensatory and punitive damages.

II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

- 3 -

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Carol Howes, (unknown) Howes, Beckwith & Barnes

Plaintiff fails to make specific factual allegations against Defendants Carol Howes, (unknown) Howes, Beckwith and Barnes, other than his claim that he was "under the[ir] care and

supervision." (Compl. ¶ 1, docket #1, Page ID#3.) He also implies that one or more of these Defendants rejected his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Carol Howes, (unknown) Howes, Beckwith and Barnes engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Defendant Sohail

Plaintiff appears to allege that Defendant Sohail violated the Eighth Amendment when he failed to timely treat Plaintiff's injuries. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. CONST. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

> under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff's only allegations against Defendant Sohail are that he failed to examine Plaintiff until six days after the accident. Plaintiff alleges no facts suggesting either that Plaintiff had an objectively serious need for immediate treatment beyond pain relief or that Sohail was subjectively aware of that need. Instead, Plaintiff alleges that, when the injury and back swelling

was reported to him on February 6, 2011, Sohail instructed other medical personnel to provide an injection of Toradol, a nonsteroidal antiinflammatory drug,[2] for his pain and to schedule Plaintiff for an appointment. When Sohail examined Plaintiff on February 11, he found no debilitating back injury, and he did not believe from his examination that Plaintiff's leg was broken. Nevertheless, Sohail ordered an x-ray of the leg, which ultimately revealed the break. Plaintiff was then treated for his broken bone.

Reading his complaint generously, Plaintiff alleges no more than that Sohail was negligent in failing to examine Plaintiff sooner or in recognizing that the leg was broken prior to receiving x-ray results. However, as previously discussed, simple medical negligence falls far short of the deliberate indifference required to state a constitutional claim. *Estelle*, 429 U.S. at 105-06 (recognizing that only intentional delay in providing necessary treatment is actionable under the Eighth Amendment); *Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010) (holding that misdiagnosis and failure to order x-rays constituted claim of medical malpractice, not Eighth Amendment violation). Moreover, Plaintiff does not allege that his condition worsened as the result of the delay. *See Palacio v. Hofbauer*, 106 F. App'x 1002, 1005 (6th Cir. 2004) (upholding dismissal of prisoner Eighth Amendment claim based on delay in medical treatment where prisoner made no allegation that delay in treatment worsened his condition), *citing Napier*, 238 F.3d at 742 (Eighth Amendment claim based on delay in medical treatment requires a showing of the detrimental effect of the delay). Accordingly, Plaintiff fails to state a claim against Defendant Sohail.

---

[2] "Toradol" is the trademarked name for certain preparations of ketorolac tromethapine, "a nonsteroidal antiinflammatory drug administered intramuscularly, intravenously, or orally for short-term management of pain . . . ." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 984, 1940 (32d ed. 2012).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: June 19, 2012  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE